Elvin BRICKHOUSE, Jr., Appellant,

v.

Robert F. ZAHRADNICK, Superintendent of the Virginia State Penitentiary, Appellee.

No. 76–2032.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 14, 1977.

Decided March 28, 1977.

Craig Ellis, Third Year Law Student (Michael E. Geltner, Georgetown University Law Center, Washington, D. C., on brief), for appellant.

Wilburn C. Dibling, Jr., Asst. Atty. Gen., Richmond, Va. (Andrew P. Miller, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Tried and convicted by the court in 1967, after waiver of a jury trial in accordance

with the Virginia practice,[1] under an indictment charging rape, abduction and robbery, the petitioner was sentenced to death on the rape charge and to imprisonment for thirty years on the robbery charge and for twenty years on the abduction charge. The conviction, on appeal to the Virginia Supreme Court, was affirmed but, on certiorari to the United States Supreme Court, the death sentence was vacated and the proceedings were remanded to the trial court for resentencing on the rape charge alone.[2] On remand, the petitioner was resentenced on the rape charge to life imprisonment and this resentencing, on appeal, was affirmed without an opinion. The petitioner then began his *habeas* proceeding in the District Court. That Court dismissed his *habeas* petition and this appeal followed.

In his brief in this Court, the petitioner contends that the Virginia criminal procedure for waiver of jury trial and trial by the court is constitutionally defective. In *Vines v. Muncy* we thoroughly canvassed similar claims and found them without merit. It is unnecessary to repeat here our reasons for such conclusion. The petitioner has, however, raised, an additional claim of constitutional violation which he asserts is unique to his case. This claim of the petitioner is that his waiver of his constitutional right to a jury trial was illegally coerced by his fear that, because of the then prevailing Virginia rule for excluding from the jury determining both guilt and punishment any person with conscientious scruples against capital punishment, a jury trial before a jury thus restricted would be so likely to result in the imposition of a death sentence as to constitute a violation of due process. He predicates this contention primarily on *Witherspoon v. Illinois* (1968) 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, decided after his trial, which held that the imposition of a death sentence (but not a finding of guilt) by a jury from which persons with conscientious scruples against capital punishment were excluded would deprive a defendant "of his life without due process." He argues that he would not have waived a jury trial if he had anticipated the decision in *Witherspoon*, which would have made illegal at his trial the exclusion of any veniremen with conscientious scruples against capital punishment.

The record in this case shows that the petitioner was represented by counsel at the time of his waiver of a jury trial. Petitioner does not suggest that his counsel was incompetent or neglectful of his rights. The trial court found such counsel able and experienced. Petitioner admitted in open court that he had consulted six or seven times with his counsel and that his counsel was fully "acquainted with the facts of [his] case." He affirmed that after reviewing with his counsel whether he should exercise his right to a jury trial, he had chosen of his own "free will" to waive a jury trial and that this was his "decision," reached by him without being "influenced by Mr. Madison [his counsel] in making that decision." Petitioner makes no contention that at the time of his waiver, he was incompetent or otherwise not in control of his mental faculties.

Under these circumstances, we think *Brady v. United States* (1970) 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, conclusive against petitioner's claim. In *Brady* the petitioner likened a guilty plea to the waiver of a jury trial and contended that his guilty plea had been coerced because the statute under which he was indicted was, subsequent to his plea, held to be unconstitutional in permitting the imposition of the death penalty for its violation *only* on a defendant who asserted his right to contest his guilt before a jury, thereby placing an impermissible burden on the constitutional right to a jury trial.[3] In denying the con-

---

1. The Virginia practice is fully described in *Vines v. Muncy* (4th Cir. 1977) 553 F.2d 342 (decided March 1977).

2. *See Furman v. Georgia* (1972) 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346.

3. For this contention, Brady relied on *United States v. Jackson* (1968) 390 U.S. 570, 572, 88 S.Ct. 1209, 20 L.Ed.2d 138.

tention, the court said (p. 757, 90 S.Ct. p. 1473):

" * * * A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, *cf. Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."

We perceive no distinction between *Brady* and the case before us. In both cases the defendant was waiving a jury trial—in *Brady* by his guilty plea, in this case by his express waiver. Under his claim in *Brady*, the defendant entered his waiver because he mistakenly assumed that the statute under which he was charged was valid in its penalty provisions; in the present case, the petitioner claims he entered his waiver because he mistakenly assumed that the procedure for qualifying jurors in a capital case in Virginia was valid. In both cases, the defendant was represented by counsel, with whom he consulted at length and by whom he was fully advised of his rights by his own admission. In both cases the defendant relied on a subsequent judicial decision, which, had he anticipated, would have induced him not to waive, in order to support his claim that his waiver at his earlier trial had been coerced or was involuntary. In neither case, however, did the waivers— in *Brady* of a right to a jury trial by his plea of guilty, and in this case by his waiver of a jury in favor of trial by the Court— "become vulnerable because [these] later judicial decisions indicate[d] that the [waivers] rested on a faulty premise."[4] It follows from this principle as established in *Brady* that the voluntariness of petitioner's waiver of a jury trial may not be invalida-

ted by any claim of coercion based on failure to anticipate the subsequent decision in *Witherspoon*.

*AFFIRMED.*

---

4.   397 U.S. at 757, 90 Ct. at 1473.